UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WYSONG CORPORATION,
     Plaintiff,

     v.                          Case No.    16-11821

APN, INCORPORATED,
     Defendant.
_____/

WYSONG CORPORATION,
     Plaintiff,

     v.                          Case No.    16-11823

BIG HEART PET BRANDS, and
JM SMUCKER COMPANY,
     Defendants.
_____/

WYSONG CORPORATION,
     Plaintiff,

     v.                          Case No.    16-11825

HILL'S PET NUTRITION, INCORPORATED,
     Defendant.
_____/

WYSONG CORPORATION,
     Plaintiff,

     v.                          Case No.    16-11826

MARS PETCARE US, INCORPORATED,
     Defendant.
_____/

1

WYSONG CORPORATION,
     Plaintiff,

     v.                       Case No.    16-11827

NESTLE PURINA PETCARE COMPANY,
     Defendant.
_____/

WYSONG CORPORATION,
     Plaintiff,

     v.                       Case No.    16-11832

WAL-MART STORES, INCORPORATED,
     Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

     In these six actions, Plaintiff Wysong Corporation, a pet food manufacturer, claims that six of its alleged competitors engage in deceptive marketing practices. Wysong contends that the Defendants place on their pet food packaging images of "premium meats, poultry, fish, and vegetables" that "do not fairly represent the actual ingredients of the packages." For the reasons explained below, Wysong's particular claims are not plausible, and Wysong is not entitled to further amend them. Accordingly, the Court grants Defendants' motions to dismiss and dismisses Wysong's Amended Complaints with prejudice and without leave to amend.

# I

Wysong is a Michigan-based pet food manufacturer. On May 23, 2016, Wysong filed six separate actions in the Northern Division of this Court alleging that six other pet food manufacturers – Mars Petcare US, Inc., APN, Inc., Big Heart Pet Brands/The J.M. Smucker Company, Hill's Pet Nutrition, Inc., Nestle Purina Petcare Company, and Wal-Mart Stores, Inc. (collectively, "Defendants") – engage in similar deceptive marketing practices in violation of the Lanham Act, 15 U.S.C. § 1125(a). Wysong claimed that the Defendants place on their pet food packages false and/or misleading images of premium meats, poultry, fish, and vegetables.

For docket efficiency, the actions were re-assigned to the Court's Southern Division as follows:

- *Wysong Corp. v. APN, Inc.*, Civil Action No. 16-cv-11821, was assigned to Judge Matthew F. Leitman;

- *Wysong Corp. v. Big Heart Pet Brands/The J.M. Smucker Company*, Civil Action No. 16-cv-11823, was assigned to Judge George C. Steeh;

- *Wysong Corp. v. Hill's Pet Nutrition, Inc.*, Civil Action No. 16-cv-11825, and *Wysong Corp. v. Mars Petcare US, Inc.*, Civil Action No. 16-cv-11826, were assigned to Judge Terrence G. Berg;

- *Wysong Corp. v. Nestle Purina Petcare Company*, Civil Action No. 16-cv-11827, was assigned to Judge Gershwin A. Drain; and

- *Wysong Corp. v. Wal-Mart Stores, Inc.*, Civil Action No. 16-cv-11832, was assigned to Judge David M. Lawson.

By August 2, 2016, three of the Defendants – Mars, Wal-Mart, and APN – had moved to dismiss the Complaints under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   There was substantial overlap between those motions.   The remaining Defendants indicated that they also intended to file similar motions. Given the considerable similarity between Wysong's claims in the various actions and between the pending and planned motions to dismiss, the assigned Judges determined that the actions should be re-assigned to a single Judge, the undersigned, for the purpose of addressing all motions under Rules 12(b)(6) and 12(c). (*See* ECF #11.[1])

After the actions were re-assigned, the Court convened a telephone conference with all counsel. (*See* ECF #12.)  During that conference, the Court directed counsel to meet and confer regarding Defendants' assertions that Wysong's claims were deficient.   The Court instructed Defendants' counsel to explain their arguments concerning the alleged deficiencies, and the Court provided Wysong an opportunity to cure the identified deficiencies by filing an Amended Complaint in each action. (*See* ECF #13 at Pg. ID 256.)  Wysong filed its Amended Complaints on September 21, 2016.

---

[1] Unless otherwise indicated, all of the Court's citations to docket entries in this Opinion and Order refer to the docket and filings in *Wysong Corp. v. Mars Petcare US, Inc.*, Civil Action No. 16-cv-11826.  The *Mars* action is representative of the actions brought against all of the Defendants, and the Court took the same procedural steps in all of the actions.

**II**

**A**

Wysong asserts a single claim in its Amended Complaints: that the Defendants have violated (and continue to violate) the Lanham Act by placing on their pet food packaging images of "premium meats, poultry, fish and vegetables" that "do not fairly represent the actual ingredients of the packages."[2] (Am. Compl., ECF #14 at Pg. ID 260.) Wysong offers three theories as to how these images render Defendants' packaging false and/or misleading:

- **The "Premium Grade" Theory:**   Wysong alleges that Defendants' packaging is false and/or misleading because it depicts images of "premium cuts of beef, chicken, lamb, fish, or other animal ingredients" – such as "lamb chops, chicken breasts, [] steak, or salmon fillets" – that consumers "would feed [their] famil[ies]," when, in fact, the food is actually made of the "lower cost parts of the animal left over after all the parts a human finds appetizing have been removed."[3] (*Id.* at ¶¶ 9, 14, ECF #14 at Pg. ID 264, 266-67.)

---

[2] As described further below, some of Defendants' products at issue are sold in packaged bags while other products are sold in labeled cans.  Wysong alleges that both the packaging and labels include misleading images of "premium" ingredients. For ease of reference, the Court will refer to the packaging and the labels collectively as "packaging."

[3] Wysong likewise alleges that all of the Defendants place images of "premium fruits and vegetables" on their pet food packages even though the "actual fruits and vegetables used in [Defendants'] pet food products … typically bear no resemblance to [the] images [Defendants'] place[] on [their] pet food products." (Am. Compl. at ¶18, ECF #14 at Pg. ID 272.)

Wysong asserts this "premium grade" theory of falsity and deception against all of the Defendants.

- **The "Primary Species" Theory:**  Wysong alleges that the packaging used by Defendants Mars, Nestle, and Big Heart is false and/or misleading because it depicts images of "premium cuts from a particular animal when the primary animal ingredient in the product is not only of a lower cost, it is from a completely different species of animal." (*Id.* at ¶17(B), ECF #14 at Pg. ID 271.)

- **The "By-Product" Theory:**  Wysong asserts that the packaging used by Defendants Mars, Nestle, and Big Heart is false and/or misleading because it depicts images of "premium cuts of chicken, beef, lamb, or fish" even though the actual "primary animal ingredient is a low cost and low grade animal 'by-product' … derived from the cheapest part of the animal" – such "as stomachs, intestines, bone, [and] blood." (*Id.* at ¶17(A), ECF #14 at Pg. ID 269.)

Wysong says that "Defendant[s'] false representations [described above] play upon the natural inclination among pet caretakers to purchase the highest quality, premium foods that are in accordance with their own sensibilities." (*Id.* at ¶11, ECF #14 at Pg. ID 265.)   In particular, Wysong contends that "premium ingredient pictures on packages … exert a [] strong influence over purchasers' decisions" because "pet food consumers place a higher value on pet food that they perceive as having ingredients like those they would purchase and cook for their families.  They believe that such foods are better than other foods that do not have that appearance."

6

(*Id.* at ¶¶ 8-9, ECF #14 at Pg. ID 263-64.)  Wysong insists that Defendants' use of these images of premium ingredients unfairly disadvantages Wysong in the pet food marketplace:

> When deciding between [Defendants' pet food] and Wysong['s pet food], many consumers choose [Defendants'] products because the pictures [on Defendants' packaging] deceptively suggest that [Defendants'] products contain higher cost and quality ingredients, while Wysong products are presented to pet owners without such deceptive pictures.

(*Id.* at ¶9, ECF #14 at Pg. ID 264.)

## B

Wysong makes no effort to explain how any particular image of a premium ingredient on any particular package is false and/or misleading in the context of the packaging as a whole.  Instead, Wysong attaches to its Amended Complaints photographs of hundreds of Defendants' packages that contain images of premium ingredients (*see*, *e.g.*, ECF ## 14-2 and 14-3), and Wysong broadly asserts that every image of a premium ingredient included on those packages is false and/or misleading in at least one of the three ways identified above. (*See* Am. Compl. at ¶14, ECF #14 at Pg. ID 266-67.)

Notably, the characteristics of the premium-ingredient images featured in Wysong's attachments and the context in which those images appear vary widely.

7

Some of the packaging depicts large images of premium ingredients[4]; other packaging depicts much smaller images.[5]  Some of the packaging depicts images of premium ingredients that are centrally or prominently located[6]; other packaging depicts such images tucked away in a bottom corner.[7]  Some of the packaging contains words or names that highlight or identify the depicted premium ingredients[8]; other packaging does not.[9]  Some of the packaging depicts a single image of a premium ingredient[10]; other packaging depicts multiple images of premium ingredients.[11]  Some products are sold in large bags[12]; others are sold in small cans.[13]

---

[4] *See*, *e.g.*, image of "Iams Healthy Naturals with Lamb + Rice," ECF #14-2 at Pg. ID 282.

[5] *See*, *e.g.*, image of "Nutro Seasonal Fish & Potato Recipe," ECF #14-2 at Pg. ID 329.

[6] *See*, *e.g.,* image of "Iams Grain Free Naturals with Salmon + Red Lentil," ECF #14-2 at Pg. ID 304.

[7] *See*, *e.g.*, image of "Iams Proactive Health Minichunks," ECF #14-2 at Pg. ID 284.

[8] *See*, *e.g.*, image of "Nutro Tender Chicken & Rice Recipe," ECF #14-2 at Pg. ID 358.

[9] *See*, *e.g.*, image of "Iams Proactive Health Smart Puppy," ECF #14-2 at Pg. ID 288.

[10] *See*, *e.g.*, image of "Iams Proactive Health Adult Chunks," ECF #14-2 at Pg. ID 287.

[11] *See*, *e.g.*, image of "Iams Healthy Naturals with Lamb + Rice," ECF #14-2 at Pg. ID 282.

[12] *See*, *e.g.*, image of "Iams Proactive Health Mature Adult," ECF #14-2 at Pg. ID 291.

[13] *See*, *e.g.*, image of "Iams Premium Puppy Food with Chicken & Beef in Gravy," ECF #14-2 at Pg. ID 301.

Wysong says nothing about how or whether the images' differing contexts and characteristics affect the alleged falsity and/or misleading nature of Defendants' packaging.[14]  Indeed, Wysong alleges that these widely varying images of premium ingredients in widely varying contexts all deliver the same message and deceive in the same way – by leading the consumer to believe that the product contains premium ingredients. (*See* Am. Compl. at ¶¶ 9, 14, ECF #14 at Pg. ID 264, 267-68.) Wysong's theory of the case thus effectively treats the context and nature of the images as immaterial to their alleged deceptiveness.

III

Defendants filed their motions to dismiss the Amended Complaints on October 21, 2016. (*See* ECF #15.)  Defendant Mars filed a "lead" brief addressing issues common to all Defendants. (*See id*.)  Every other Defendant then filed a "supplemental" brief.   In the motions, Defendants argue that the Amended Complaints fail to plausibly assert a claim under the Lanham Act.  Wysong filed a single consolidated response to all of the motions on November 21, 2016. (*See* ECF #16.)  The Court held a hearing on the motions on February 1, 2017.

---

[14] Wysong does allege that "[i]n many instances the photograph [of the premium ingredient] is placed on the package next to a photograph of the finished processed [ingredient] to convey equivalency." (Am. Compl. at ¶10, ECF #14 at Pg. ID 264-65.)  But Wysong does not identify any particular packaging that allegedly misleads consumers in this way, nor does Wysong explain how this is misleading in the context of the entire package and in light of the characteristics of the images in question.

## IV

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss" under that rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

# V

# A

Wysong brings its deceptive marketing claims under Section 43(a) of the Lanham Act.  That section provides, in relevant part, that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
> [….]
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) and (a)(1)(B).

To state a cause of action for false or misleading advertising under Section 43(a) of the Lanham Act, a plaintiff must establish the following:

> 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and harm to the plaintiff.

*American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999); *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (same).

A plaintiff may satisfy the first element of its Lanham Act claim – that a defendant "has made false or misleading statements of fact concerning his own product" – in one of two ways. First, the plaintiff may demonstrate that the challenged statements are "literally false." *Certified Podiatric Physicians*, 185 F.3d at 614. "Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers. Actual deception is presumed." *Id.* (internal citations omitted).

In the alternative, the plaintiff may show that the statements are "true yet misleading or confusing." *Id.* "Where statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception (*i.e.,* evidence that individual consumers perceived the advertisement in a way that misled them about the [] product)." *Id.*

Here, Wysong insists that the images of premium ingredients on Defendants' pet food packages are literally false and/or that they are misleading. The Court will first analyze whether Wysong has plausibly alleged that the images are literally false under any of the three theories identified above (*i.e.*, the "premium grade," "primary species," and "by-product" theories). The Court will then analyze whether Wysong

12

has plausibly alleged that the images, even if not literally false, are misleading under any of its three theories.

## B

When "analyzing whether an advertisement or product name is literally false, a court must determine, first, the unambiguous claims made by the advertisement or product name, and second, whether those claims are false." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). "[O]nly an *unambiguous* message can be literally false." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 737 (6th Cir. 2012) (quoting *Novartis*, 290 F.3d at 587) (emphasis in *Novartis*). Indeed, "[t]he greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion ... the less likely it is that a finding of literal falsity will be supported." *Id.* at 736 (quoting *Novartis*, 290 F.3d at 587). Finally, in evaluating a claim of literal falsity, a court must determine whether the allegedly false message "will *necessarily* and *unavoidably* be received by the consumer." *Novartis*, 290 F.3d at 588 (emphasis added). For the reasons explained below, none of Wysong's three theories state a plausible literal falsity claim.

## 1

Wysong's "premium grade" theory does not state a plausible literal falsity claim. That theory rests upon Wysong's assertion that "[a] picture of a lamb chop,

13

or chicken breast, [] steak, or salmon fillets is a representation that the food in the package contains lamb chops, chicken breasts, steak, or salmon fillets." (Am. Compl. at ¶9, ECF #14 at Pg. ID 264.)

But an image of a premium ingredient on a package of pet food, standing alone, does not "unambiguously," "necessarily," and "unavoidably," *Novartis*, 290 F.3d at 586, 588, convey that the food in the package contains the exact cut or grade of the ingredient pictured.  A reasonable consumer could view such an image as merely identifying the *type* of ingredients that are included in the package.  For instance, a picture of a lamb chop or a chicken breast on a pet food package could reasonably be interpreted as a shorthand representation that the package contains lamb meat or chicken meat, respectively, rather than lamb chops and chicken breasts specifically.  These images could also reasonably be interpreted as representing the flavor of the food inside the package.  Simply put, the challenged images, standing alone, do not necessarily and unambiguously convey that the food contains any particular premium ingredient, and thus Wysong's "premium grade" theory does not state a viable literal falsity claim.

In *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002), the United States Court of Appeals for the Fourth Circuit reached a similar conclusion in a case involving allegedly misleading images on a product package.  In *Scotts Co.*, the defendant used an "illustration of a mature crabgrass plant" on the package of a

product intended to control crabgrass, but not *mature* crabgrass. *Id.* at 270. The plaintiff argued that the packaging "falsely suggested that [the product] could kill mature crabgrass." *Id.* at 270. The Fourth Circuit disagreed, holding that while the image in question *could* be interpreted in the way plaintiff suggested, that was not the *only* interpretation:

> While it is possible that some consumers would interpret the graphic in the manner [plaintiff] suggests, *it is likewise possible that consumers would understand the illustration as showing mature crabgrass for identification purposes only*, so that they can determine whether the weed that is vexing them is crabgrass or some other backyard pest. Because the graphic can reasonably be understood as conveying different messages, [plaintiffs'] literal falsity argument must fail.

*Id.* at 275 (emphasis added).

Likewise, it is possible that consumers viewing Defendants' packaging would understand that the images of premium ingredients on Defendants' packages are for "identification purposes only" and are used to help consumers determine the types of meats, poultry, fish, and/or vegetables included in, or the flavors of, the pet food they are purchasing. Thus, as in *Scotts Co.*, Wysong's literal falsity claim fails.

## 2

Wysong's "primary species" theory also does not state a viable literal falsity claim. As described above, in that theory Wysong claims that certain images are literally false because they "depict cuts from a particular animal when the primary

animal ingredient in the product is not only of a lower cost, it is from a completely different species of animal altogether." (Am. Compl. at ¶17(B), ECF #14 at Pg. ID 270.)  This theory rests upon Wysong's contention that the mere image of meat from a particular animal on a pet food package unambiguously communicates that meat from that animal is the "primary" animal ingredient in the food.

That is not necessarily so.  An image of a cut of meat from a particular animal on a package, standing alone, may reasonably be understood to communicate, among other things, that the food contains *some* meat from that animal – not necessarily that that meat is the *primary* animal ingredient.  Such an image may also communicate that the food has a certain flavor.  Because there are alternative, reasonable interpretations of the challenged images, Wysong's "primary species" literal falsity claim fails as a matter of law.

The federal court in *Sensible Foods, LLC v. World Gourmet, Inc.*, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012), rejected a similar literal falsity claim.  In that case, the plaintiff alleged that the defendant violated the Lanham Act by "using the word apple in the name of its Apple Straws product when in fact that product is primarily a potato product." *Id*. at *6 (internal quotation marks omitted).  The court held that the inclusion of the word "apple" in the product's name was not literally false because, even though apples were not the primary ingredient, "the product contain[ed] pureed apples." *Id.*  Here, too, the challenged images are not literally

16

false because even if the depicted meats are not the *primary* ingredients in the food, those meats are nonetheless present.[15]

**3**

Finally, Wysong's "by-product" theory does not state a plausible literal falsity claim.  In this theory, Wysong maintains that certain images are literally false because they "depic[t] premium cuts of chicken, beef, lamb, or fish," even though the "primary animal ingredient" in the pet food is actually "a low cost and low grade animal 'by-product.'" (First. Am. Compl. at ¶¶ 17(A), ECF #14 at Pg. ID 269.)

This literal falsity theory fails for the same reasons that Wysong's "premium grade" and "primary species" literal falsity theories fail: namely, an image of a premium cut of meat on a package of pet food, standing alone, does not necessarily and unambiguously communicate that (1) the food contains any particular quality or quantity of the pictured meat or (2) the food contains a greater percentage of the pictured meat than by-product.  Once again, the image may reasonably be understood to communicate that the food contains *some* amount of the pictured meat or contains the flavor of the pictured meat.  Moreover, because all of the pet foods at issue contain at least some amount of the meat(s) depicted in the images on the

---

[15] Wysong has not specifically identified any of Defendants' packaging that depicts a type of animal meat that is absent from the enclosed product.

packaging, the images are not literally false even if the percentage of by-product in the foods exceeds the percentage of the depicted meat(s).[16]

## C

In order to state a claim that an image is misleading in violation of the Lanham Act, a plaintiff must plausibly allege that the image actually deceives, or has a tendency to deceive, "a substantial portion of the intended audience." *Certified Podiatric Physicians*, 185 F.3d at 616 (internal emphasis removed). The alleged deceptiveness of an image is analyzed under the "reasonable consumer" standard. *Pernod Ricard USA LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 250 (3d Cir. 2011) (affirming dismissal of Lanham Act false advertising claim and holding that product package "could not mislead any reasonable consumer"). Courts applying that standard must rely on their "judicial experience," *Sensible Foods*, 2012 WL 566304, at *6, and their "common sense." *Pernod Ricard*, 653 F.3d at 252 n.12. Finally, when "determining whether a reasonable consumer would have been misled by a particular advertisement, *context is crucial*." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (emphasis added).

---

[16] At the hearing before the Court, Wysong's counsel acknowledged that the products that are the subject of the "by-product" theory *do* contain at least some of the animal meat that is depicted on the packaging. (*Wysong Corp. v. Nestle Purina Petcare Co.*, Case No. 16-cv-11827 (E.D. Mich.), 2/1/17 Hearing Tr. at 29-30, ECF #22 at Pg. ID 302.)

"[W]hether an advertisement is deceptive is *generally* a question of fact which requires consideration and weighing of evidence from both sides and therefore *usually* cannot be resolved through a motion to dismiss." *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*, 2016 WL 3227676, at *2 (E.D. Mo. June 13, 2016) (emphasis added). "However, that is not to say that resolution of a false advertising case on a motion to dismiss is always inappropriate. Courts will dismiss false advertising and similar claims when, construing the factual allegations in the light most favorable to the plaintiff, the challenged advertising statements would not plausibly deceive a reasonable consumer." *Id.* In fact, there is "ample case law dismissing" false advertising claims in food packaging cases where the allegations of deceptiveness are not plausible and/or defy common sense. *Kacocha v. Nestle Purina Petcare Company*, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (collecting cases); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (compiling cases dismissing false advertising claims as a matter of law); *Manchouck v. Mondelez International, Inc.*, 2013 WL 5400285, at *2 (N.D. Cal. Sept. 26, 2013) (noting that "numerous decisions [] have dismissed similar food labeling claims at the pleading stage").

For the reasons explained below, Wysong's three theories of deception are properly dismissed as a matter of law.

**1**

Wysong's "premium grade" theory of deception is deficient because it does not account for the characteristics or context of the particular images it claims are misleading.  As described above, instead of explaining or alleging how any particular image on any specific package is misleading, Wysong attaches to its Amended Complaints photos of hundreds of Defendants' packages that contain widely varying images of premium ingredients in markedly different contexts.  Wysong then broadly contends that every image of a premium ingredient on every depicted package, no matter its characteristics or context, would deceive a reasonable consumer into believing that the enclosed food contains the pictured premium ingredient.

That is not enough under the Lanham Act.  A Lanham Act plaintiff has "the burden of proving" that an allegedly misleading image on an advertisement "actually deceives or tends to deceive in the *overall context of the advertisement*." Charles E. McKinney and George F. Long III, *Federal Unfair Competition: Lanham Act 43(a)* 6.11 (June 2017) (emphasis added).  Wysong's "premium grade" theory fails because it contains *no* specific allegations aimed at satisfying that burden.  Instead, the theory rests upon the notion that *every* image of a premium ingredient on Defendants' attached pet food packaging – no matter its characteristics or context –

conveys the same misleading message about the product's contents. (*See* Am. Compl. at ¶¶ 9, 14 ECF #14 at Pg. ID 264, 267-68.)

However, "context is crucial" to an assessment of whether an image is deceptive, *Fink*, 714 F.3d at 742, and that is especially true with respect to an image of a premium meat on pet food packaging.  As explained above, such an image, standing alone, could potentially communicate several *different* messages – *e.g.*, that the food contains the type of meat depicted (but not necessarily the same grade or cut), that the food's flavor matches the image, and, perhaps, that the food contains the precise cut and grade of meat depicted.  The context and character of the image – its size, its color, its placement on the package, the surrounding images, its relationship to the product's name and other descriptive text on the package, etc. – determines which of these messages (or others) the image may plausibly be understood to convey.  Thus, it was incumbent upon Wysong to include in its Amended Complaints allegations showing how each image of a premium ingredient underlying its claim, given its context and character, could plausibly be understood to convey the meaning that Wysong attributes to it.  Rather than including these essential allegations, Wysong advances a theory that treats the context and characteristics of the images as immaterial to their alleged deceptiveness.

Wysong's own conduct in these actions demonstrates that the context of an image is essential to the determination of whether the image is deceptive.  Indeed,

Wysong treated a single image of a premium ingredient as deceptive in one context but not in another.  Wysong did so in the process of amending its original Complaints.  When Wysong filed its Amended Complaints, it "eliminated dozens" of packages that it had previously deemed misleading in its original Complaints. (*Wysong Corp. v. Nestle Purina Petcare Co.*, Case No. 16-cv-11827 (E.D. Mich.), 2/1/17 Hearing Tr. at 108-09, ECF #22 at Pg. ID 461-62.)  Many of the deleted packages include images of premium ingredients that are nearly *identical* to images on packages that Wysong continues to attack as misleading in its Amended Complaints.[17]  Wysong nonetheless made the "legal judgment" that the deleted packages "didn't really fit with [its] theory." (*Id.* at 109, Pg. ID 463.)  Wysong's

---

[17] Below is one example of Wysong drawing different conclusions about the deceptiveness of essentially the same image of a premium ingredient in two different contexts.  Other examples are reflected in Appendix One to this Opinion and Order.

| **DELETED FROM ORIGINAL COMPLAINT  BECAUSE IT "DIDN'T FIT WITH [WYSONG'S] THEORY"** | **LEFT IN AMENDED COMPLAINT AS REPRESENTATIVE OF WYSONG'S "THEORY"** |
| --- | --- |
|  |  |
| Purina Beneful Prepared Meals Chicken Stew (*Wysong Corp. v. Nestle Purina Petcare Company*, Civil Action No. 16-11827, ECF #4 at Pg. ID 73.) | Purina Beneful Prepared Meals Simmered Chicken Medley (*Wysong Corp. v. Nestle Purina Petcare Company*, Civil Action No. 16-11827, ECF #4 at Pg. ID 74; ECF #16-2 at Pg. ID 190.) |

"judgment" implicitly acknowledges that whether an image of a premium ingredient on a pet food package is deceptive depends upon the context and characteristics of the image.[18]

That is precisely why a claim under Wysong's "premium grade" theory is plausible only if it contains specific allegations showing how the image is misleading in light of its context and characteristics. (*See* Section VI below for an extended analysis of analogous claims against pet food producers that have been deemed plausible because they contain detailed allegations concerning context and characteristics.)   Wysong's "premium grade" theory fails because it lacks those allegations – and, just as importantly, because it treats the essential issues of context and characteristics as immaterial.[19]

---

[18] While Wysong's litigation conduct evidences its recognition that context matters, Wysong does not account for context in the Amended Complaints – whose allegations the Court reviews here – and, instead, it advances a theory that treats context as immaterial.

[19] While Wysong does attach photographs of Defendants' packages that include the allegedly-misleading images of premium ingredients, that attachment is no substitute for specific allegations explaining how the characteristics and contexts of the images cause deception.  As described above, Wysong attaches *hundreds* of photographs of allegedly-deceptive images in widely varying forms and substantially differing contexts. Wysong does not fulfill its pleading obligations by attaching such a large collection of images and leaving it to the Court to determine – without any image-specific guidance from Wysong –  which aspects of the images' characteristics and contexts, if any, render them misleading.  Moreover, as described in detail above, the flaw in Wysong's pleading is not merely the absence of allegations concerning context and characteristics, but, also, that the theory treats those matters as immaterial to the deceptiveness of the images.

**2**

As with Wysong's "premium ingredient" theory of deception, its "primary species" theory of deception fails because it does not account for the context and character of the allegedly-misleading images and, instead, treats those matters as immaterial.  Once again, an image of a type of meat on a pet food package could convey a number of messages, and it was incumbent upon Wysong to plead specific allegations plausibly showing that each of the challenged images, given its context and characteristics, could be understood to communicate that the pictured meat was the primary animal ingredient.  Wysong's "primary ingredient" theory is deficient because it lacks those essential allegations and rests upon the notion that the context and characteristics of the images are immaterial to whether the images are deceptive.

**3**

Finally (and for all of the reasons explained in sub-sections 2 and 3 above), Wysong's "by-product" theory of deceptiveness fails because it does not account for the context and characteristics of the allegedly-misleading images and treats those matters as immaterial.  Wysong did not allege how the challenged images, given their contexts and characteristics, could plausibly be understood to convey that the product contained more of the pictured meat than by-product.

# VI

This Court is not the first to confront allegations that pet food manufacturers have violated the Lanham Act or equivalent state-law false-advertising statutes through allegedly-misleading depictions of certain desirable ingredients on their packaging.  The federal courts addressed such claims in *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*, 2015 WL 3645262 (E.D. Mo. June 10, 2015) ("Blue Buffalo I"); *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Company*, 2016 WL 3227676 (E.D. Mo. June 13, 2016) ("Blue Buffalo II"), and *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016).  In each of those decisions, the courts declined to dismiss some of the false-advertising claims at issue.  But both courts acknowledged that their decisions were not easy ones and that some of the remaining claims only narrowly survived plausibility review.

As described in detail below, the allegations of deception that the courts deemed sufficient in both *Blue Buffalo* decisions and in *Kacocha* were more detailed and far stronger than Wysong's allegations here.  Most importantly, those allegations specifically accounted for the context and characteristics of the images at issue.  That the far stronger allegations in those cases were close to the plausibility threshold confirms that Wysong's much weaker allegations, which do not specifically account for context or characteristics, fall well below that threshold.

25

## A

In *Kacocha*, the plaintiff alleged that the defendant "manufacture[d] and deceptively and falsely market[ed] its popular 'Beggin' dog treat products as being largely comprised of real bacon, when in reality, bacon [was] just a minor ingredient." (Kacocha Complaint at ¶1, Case No. 15-cv-5489 (S.D.N.Y.), Dkt. #1.[20]) The plaintiff's claim focused, in part, on the defendant's packaging, and the plaintiff provided substantial detail about the particular packaging and the context in which images appeared on that packaging. For instance, the plaintiff claimed that the packaging "prominently" featured images of "giant bacon strips" that were particularly misleading to consumers. (*Id.* at ¶2.) The plaintiff also included in his complaint a careful analysis of the entire package, as a whole:

> Defendant's false and misleading message is presented on these [product display panels] which all consumers see when they pick up the Beggin' Strips package to buy or use. For example, the 25 ounce bag of Beggin' Strips Original Bacon Flavor shows on the PDP a salivating dog,

---

[20] The Court may take judicial notice of the allegations in the *Kacocha* pleadings and of the allegations in the *Blue Buffalo* pleadings discussed below. *See*, *e.g.*, *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (taking judicial notice of complaint filed in a different action and noting that "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice"). Moreover, the scope of the Court's judicial notice is limited. The Court merely takes notice of the fact that the allegations described above were made in the referenced pleadings. The Court reaches no conclusion about the veracity of those allegations.

licking his chops in the lower left. The upper half of the package states "Purina" in moderate size type on the upper left, with *"Beggin' Strips" proclaimed in large, bold type at the center*, with the words "Brand Dog Snack" in very small type below. Immediately below that, the weight of the package is set forth in large bold type – in this example, "25 oz." Below the 25 oz., *the phrase "made with real bacon!" is prominently set forth*. Below that is a *large image of a crispy piece of bacon* splayed across nearly one-half the package. Nestled just below to the bottom right of the crispy piece of bacon is an icon of a small black frying pan containing two sizzling pieces of bacon. In a purple ball atop which the bacon-filled frying pan rests, *"bacon flavor" is boldly displayed*. Just below the bottom circumference of the ball is the text "AHH, LOVE AT FIRST SNIFF!" Finally, in the bottom right corner of the packaging, the net weight of the product is set forth.

The back packaging of the Beggin' Strips is equally misleading. The top half features the image of a crazed, outstretched, salivating dog chasing what looks like a *giant crispy strip of bacon*. Immediately below that image, in *huge bold type, is the caption "BacoNology 101."* Below "BacoNology 101" on the left of the packaging is a box containing the following text: "There's No Time Like Beggin' Time. Beggin.com." To the right of the box is the explanation of the meaning of the banner "BacoNology 101." Bullet point 1 is "EXCITEMENT = BEGGIN' X SPEED OF SMELL." Bullet point 2 is "WHAT HAPPENS WHEN AN IRRESISTIBLE AROMA MEETS AN IMMOVABLE APPETITE? BEGGIN' TIME!" Bullet point 3 states: "AN OBJECT IN MOTION STAYS IN MOTION. CHECK OUT MY TAIL!" To the right of the bullet points is the icon of the black frying pan containing two crispy strips of bacon. At the very right corner of the back packaging, below a set of instructions to consumers to "Feed as a treat to your adult dog," is an oval containing text stating: "Baconologists standing by," followed by the Purina logo and the purina.com website address, the Purina call center phone number, and its hours

> of operation. The bottom left corner of the back packaging
> contains a "Guaranteed Analysis" of the protein, fat, and
> fiber content of the product, plus a list of ingredients, with
> the ingredients listed in decreasing order of predominance
> by weight.

(*Id.* at ¶¶ 17-18; emphasis added.)

The plaintiff did not stop with his analysis of the alleged deception caused by the packaging.  He alleged that the name of the product, how it was shaped and colored, and its smell all contributed to the deception of consumers: "[T]he Beggin' dog treat products are cut, shaped, colored, and striated to look like real bacon, and they are flavored to smell like real bacon. The product name, 'Beggin,' is designed to, and does sound virtually the same as 'Bacon' when spoken." (*Id.*)  Finally, the plaintiff alleged that "[d]efendant's misleading representations and omissions [were] conveyed to the consuming public uniformly and through a variety of media, including its omnipresent television advertisements, its websites and online promotional materials," and that that advertising campaign reinforced the misleading nature of the product's packaging. (*Id.*)  The plaintiff then specifically explained how the television advertisements for the Beggin' Strips product reinforced the allegedly-misleading message that the product contained real bacon:

> Defendant aggressively markets its Beggin' dog treat
> product line, and engages in a long-running, popular,
> national television commercial campaign featuring
> comical videos of dogs enthusiastically musing about their
> strong desire for bacon and Defendant's Beggin' dog treat
> products.   For     example,    Defendant's   television

28

commercials for its Beggin' Strips dog treat product plainly, but falsely, suggest that the product is made of bacon and that the prime ingredient is bacon.

[….]

For instance, one famous television ad, which Plaintiff has viewed, bears the tagline "There's No Time Like Beggin' Time." The commercial has aired over 6,700 times on national and spot television, and is currently being aired. See www.ispot.tv/ad7IFX/purina-beggin-strips-beggin-time. The commercial begins with an adult female opening a bag of Beggin' Strips. A visualization of fumes emanates from the bag which waft to the family dog resting on the floor, head down. As soon as the fumes reach the dog, he jumps to attention, with a thought bubble emanating from his right ear. The thought bubble contains a picture of four strips of crispy bacon on a plate. The dog starts shouting (by a voiceover): "Bacon, gotta get that bacon!" before barking and running downstairs, seeking out the source of the fumes. The voiceover frenetically continues: "Smoky bacon! Crispy bacon! Tasty bacon!" as the dog races through the house, careening into a pile of alphabet blocks a small girl is playing with in the family room. The dog causes the tower of blocks to spin around until it stops and spells out "BACON" to the delight of the clapping child. The dog runs into the living room, where the man of the house is napping in a recliner. Screaming "Where is it? Where's the bacon,?" (an ironic, though unintended metaphor for this entire case), the dog jumps on the napping man, waking him up all flustered. Another male voiceover, emanating from the television in the living room as a news broadcaster, states: "Bacon popular. Story at 11." The dog bursts into the kitchen, shouting "Yummy, crunchy, BACON! BACON! BACON!" After looking at an empty frying pan on the stovetop, the dog cries: "There, in that bag" as he sees the woman of the household holding the bag of Beggin' Strips. She wooingly entreats: "Who wants a Beggin' Strip?" The dog screams: "Me! I'd get it myself but I don't have thumbs. Yum! Yum! Yum! IT'S

29

BEGGIN'! Mmm, I love you!" The woman hands the dog a strip that looks just like a bacon strip. The thankful dog jumps on her as she kneels, and he kisses her face. Another male voiceover states: "Beggin' Strips, Made with real bacon. There's no time like Beggin' time!," as a frying pan of oil sizzles in the background. Throughout the commercial, when the word "beggin'" is used, it sounds just like "bacon."

This well-known television commercial, and others used by Defendant to market its Beggin' dog treat products, falsely portray the treats as being made largely of real bacon.

(*Id.* at ¶¶ 13-15.)

Notwithstanding all of these specific allegations about both the product packaging and the "omnipresent" television and media advertisements, the court struggled to decide whether the plaintiff stated a plausible claim of consumer deception. The court ultimately concluded that the claim was plausible, but the court "emphasiz[ed] that the question [was], to be sure, a *close* one…." *Kacocha*, 2016 WL 4367991, at *16 (emphasis added).

## B

In *Blue Buffalo*, Blue Buffalo Company, Ltd. and Nestle Purina Petcare Company, competing pet food manufacturers, filed false and/or deceptive advertising claims against each other. Some of the claims were based, in part, on depictions of certain desirable ingredients on the parties' packaging. The court declined to dismiss all of these claims.

30

In one claim that survived, Purina claimed that Blue Buffalo's packaging and marketing of its Super 7 Lifesource Bits product painted a deceptive picture of the product's ingredients.  In Purina's words: "Blue Buffalo's marketing and advertising … falsely misle[d] consumers into believing that [Lifesource Bits] contain[ed] significant amounts of human grade ingredients such as the fresh fruits and vegetables pictured on the product packaging and website." (Purina Counterclaim, *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*, Case No. 15-384 (E.D. Mo.), Dkt. #105 at ¶¶ 15-16.)   In support of this claim, Purina highlighted the characteristics of certain allegedly-deceptive images and the context in which they appeared.   Purina alleged that: (1) the front of the Lifesource Bits package "prominently represented," in both text and in "large and colorful graphic[s]" of seven different fruits and vegetables, that the product contained "ingredients rich with antioxidants;" and (2) the back of the package featured (a) a second "prominent image of the seven fruits and vegetables, with the caption 'Super 7 Antioxidant-Rich Ingredients'" and (b) additional descriptive text which informed consumers that "BLUE's exclusive LifeSource Bits now feature our Super 7 package of antioxidant-rich ingredients which include spinach, pumpkin, blackberries, apples, blueberries, cranberries, and pomegranate." (*Id.* at ¶¶ 12-13.)  Purina also contended that specific pages of Blue Buffalo's website "reinforced" the "message" on the Lifesource Bits packaging:

> The false and misleading message of the packaging for the [Lifesource Bits products] is further reinforced by Blue Buffalo's website. Under the section labeled "Our Enhanced LifeSource Bits Now with Super 7 Natural Antioxidants," the image of a cornucopia of fresh fruits and vegetables is pictured and Blue Buffalo assures consumers that its "Super 7 package" includes: spinach, pumpkin, cranberries, blueberries, pomegranate, and blackberries. The website reinforces Blue Buffalo's message that the seven fruits and vegetables depicted are seven of the main ingredients in these pet food products….

(*Id.* at ¶14.)

The court reviewed these allegations and found them "weak." *Blue Buffalo II*, 2016 WL 3227676, at *3. Nonetheless, when the court considered the "challenged advertisements, packaging, and website statements *as a whole*," it concluded that Purina's allegations were not "so incredible" that dismissal was appropriate. *Id.* (emphasis added).

The court also declined to dismiss Blue Buffalo's claim that the packaging and marketing of Purina's "Beneful" line of products was misleading. In that claim, Blue Buffalo insisted that Purina's multi-faceted marketing campaign "coney[ed] that 'Real Beef'" or other prominently-displayed ingredients were "the primary ingredient[s] in the [Beneful] product" when they were not. (Blue Buffalo First Amended Complaint, *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*, Case No. 15-384 (E.D. Mo.), Dkt. #25 at ¶33.) Specifically, Blue Buffalo emphasized that: (1) the packaging for the Beneful products "typically featured" "prominent[]" and

32

"colorful pictures of chunks of whole meat, whole vegetables and grains, scattered across the white background of the package" located near "claims that the foods are made with 'real' ingredients;" (2) the front of the Beneful packages depicted a "[a]n orange ribbon directly underneath the name of the brand [which] prominently display[ed] the words 'With Real Beef' in white lettering;" and (3) the Beneful packaging "reinforce[ed]" the message featured on Beneful's television commercials – ads that Blue Buffalo specifically alleged included "a cascade of apparently human-grade meats, vegetables and grains falling through the air" – that the Beneful products were "comprised primarily of high-quality wholesome ingredients." (*Id.* at ¶¶ 32-34.)

The court held that these allegations of deception were plausible.  It concluded that the "*repeated depictions* of whole pieces of beef" and other ingredients prominently featured *both* on the Beneful packages *and* television commercials could plausibly mislead a reasonable consumer "into thinking that the Beneful dog food contain[ed] greater amounts of those [depicted] ingredients." *Blue Buffalo I*, 2015 WL 3645262, at *8 (emphasis added).

Finally, the court refused to dismiss Blue Buffalo's claim that Purina's packaging and advertising for its Chef Michael's brand of pet food was misleading. Blue Buffalo contended that the packaging and advertising for this brand were deceptive because, among other things, "[c]ontrary to [Purina's] false and

33

misleading claims, the 'Tender Pieces' [of meat featured on the product's label] include[d] soy products and other cheaper ingredients, [and thus] any meat components of these pieces [were] NOT the whole pieces of premium meat cuts pictured in the advertisements and packaging." (Blue Buffalo First Amended Complaint, *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*, Case No. 15-384 (E.D. Mo.), Dkt. #25 at ¶41.)  In support of this claim, Blue Buffalo pointed out that: (1) the packaging for the Chef Michael's line of products "prominently feature[d] photos of pieces of raw 'Real Chicken' and 'Real Beef;'" (2) the packaging included photos of cooked chicken and beef –promoted as "Tender Pieces" – located directly next to images of raw chicken or beef and the phrase "Real Chicken [or Real Beef] is Our #1 Ingredient;" (3) the names of the products, such as "Oven Roasted Chicken" and "Grilled Sirloin Steak" "reinforce[d]" that the package contained the "real chicken" and "real beef" pictured; and (4) the "tag line prominently featured on the product's website [] – 'It's not just dog food.  It's Chef Michaels'" – "reinforced" that the "product [was] made from chunks of premium meat." (*Id.* at ¶¶ 40-42).

The court ruled that these allegations stated a plausible claim of deception.  It concluded that "Purina's advertising *and* packaging" could "mislead consumers into thinking that the 'Tender Pieces' [as named and identified on the Chef Michael's

packaging] [were] whole pieces of chicken." *Blue Buffalo I*, 2015 WL 3645262, at *11 (emphasis added).

C

The allegations deemed sufficient in *Kacocha and Blue Buffalo* are far stronger than Wysong's allegations here in two significant respects. First and most importantly, unlike Wysong's claims, the claims that survived in *Kacocha* and *Blue Buffalo* carefully accounted for the context and character of the allegedly-deceptive images. Those claims provided important details about the images of the premium ingredients and their placement on the allegedly-deceptive packaging. As described in detail above, those claims highlighted, among other things, the connections between the images and surrounding words, the link between the images and the names of the products, whether the images were prominently displayed on the packaging, whether attention was drawn to the images through special effects or otherwise whether the images appeared repeatedly, and whether the packaging contained graphics and/or color schemes that drew the consumer's eye to the images. Wysong's claims contain none of this detail.

Second, the claims deemed plausible in *Kacocha* and *Blue Buffalo* rested upon much more than the mere depiction of premium ingredients on pet food packaging. Those claims alleged that consumers were misled by a *combination* of images *and* statements across a *variety* of media (such as television advertisements, websites,

35

and online promotional materials). The parties also provided important specific details about the statements in that media and explained how those particularly-identified statements reinforced the misleading message on the packaging. Thus, the parties alleged that deception resulted from the *collective* impact of *specifically-described* deception across a variety of media, not from an image of a premium ingredient on a package alone.

Wysong has not done the same. While Wysong does allege that the Defendants "reinforce [their] misleading photographs on packages … with television, internet, and print advertising with substantially the same depictions," (Am. Compl. at ¶23, ECF #14, Pg. ID 274), Wysong does not provide a single detail or specific factual allegation about any alleged deception on any television advertisements, websites, or print advertising. Wysong's lone conclusory allegation about these other forms of marketing falls far short of the detailed allegations of coordinated deception that were made in *Kacocha* and *Blue Buffalo*.

The comparative weakness of Wysong's claims underscores their lack of plausibility. *Kacocha* and *Blue Buffalo* show what a plausible claim of deception may look like in the pet food world. Wysong's claims lack essential components of, and pale in comparison to, those claims.

## VII

The Court declines to allow Wysong to amend its complaints for a second time.  While leave to amend should be "freely give[n] *when justice so requires,*" Fed. Rule Civ. Proc. 15(a)(2) (emphasis added), justice does not require that Wysong be permitted to file Second Amended Complaints.  The Court already gave Wysong the opportunity to amend its claims once, and at that time the Court stressed its expectation that Wysong would take that opportunity to remedy the deficiencies highlighted by the Defendants.  Wysong did not do so.  Instead, it largely stood pat on its originally-pleaded claims.  And the Defendants and the Court then spent considerable time analyzing those claims.  Under these circumstances, it would be *unjust* to permit Wysong to amend again.

A careful review of the procedural history of these actions confirms that Wysong should not be permitted to file yet another amendment.  The most important aspect of that history is that well before Wysong filed its Amended Complaints, several of the Defendants had highlighted Wysong's failure (in the original Complaints) to make specific allegations concerning the characteristics and contexts of the allegedly-deceptive images of premium ingredients.  Defendants Mars, APN,

and Wal-Mart raised these issues (and others[21]) in their motions to dismiss Wysong's original Complaint (the "Initial Motions to Dismiss").

For instance, Mars argued that its "package[s] or label[s] must be viewed as a whole" and that the "*mere presence* of [] images of meat" could not mislead reasonable consumers into believing that the pictured meat was the primary animal ingredient in the product. (Mars' Initial Mot. to Dismiss, ECF #7 at Pg. ID 177, 182; emphasis added.)   Mars further insisted that many of the images could not be misleading given their size and context.   More specifically, Mars contended that "[t]he images of meats, fruits, and vegetables comprise *less than 10% of the space* on [their] package[s] or label[s] and in most cases substantially less than 10%" and that "[a] substantial portion of reasonable purchasers are not likely to believe that Mars's pet food is fit for human consumption *based on the presence of a small image* of a premium cut of meat on the package or label." (*Id.* at Pg. ID 179, 181; emphasis added.)

Likewise, Wal-Mart argued that Wysong did not account for any aspect of the packaging other than the challenged images: "[B]eyond pointing to pictures, Wysong [has] alleg[ed] no facts that could make its [] theory plausible." (Wal-Mart

---

[21] These Defendants primarily argued that an image of a premium ingredient on a pet food package would never deceive a consumer into believing that the food contained that precise ingredient.  But they also raised their concerns, described in text above, that Wysong's allegations failed to account for the characteristics and contexts of the allegedly-deceptive images.

Initial Mot. to Dismiss, *Wysong Corp. v. Wal-Mart Stores. Inc.*, Case No. 16-cv-11832 (E.D. Mich.), ECF #13 at Pg. ID 61.)   Wal-Mart also contended that Wysong's claim was not plausible in part because "Wysong [did] not differentiate its Lanham Act theory by product, or indeed, differentiate at all." (*Id.* at Pg. ID 65-66.)

Finally, APN stressed that Wysong's allegations needed to be "[c]onsidered in the context of the packaging as a whole." (APN Initial Mot. to Dismiss, *Wysong Corp. v. APN, Inc.*, Case No. 16-cv-11821 (E.D. Mich.), ECF #9 at Pg. ID 78.)  And APN highlighted that Wysong's claims rested entirely on the images, standing alone: "Wysong's Complaint boils down *to a single gripe* about [Defendants'] advertising that *rests solely* on Wysong's unrealistic view of how consumers allegedly react to *images* of meats, fish, fruits, vegetables, and other foods *on pet food packaging*." (*Id.* at Pg. ID 83; emphasis added.)

The Court reviewed the arguments in the Initial Motions to Dismiss and concluded that Wysong deserved the opportunity to address them (and the arguments to be made by the other three Defendants) by adding factual allegations to its claims. The Court did not want to undertake an exhaustive analysis of Wysong's claims until it had given Wysong that opportunity.  Nor did the Court want the parties to spend time and resources on motion practice until Wysong had the chance to augment its claims.   The Court therefore convened a telephonic status conference with all

counsel to address these matters. (*See* ECF #12.)  The Court told counsel for Wysong and for all Defendants that it expected them to meet and confer regarding Defendants' contentions that Wysong's original allegations were deficient.  The Court explained that it would give Wysong the opportunity to file First Amended Complaints in which it could address any deficiencies raised by the Defendants in the Initial Motions to Dismiss and/or during the meet-and-confer process.  Following the telephonic conference, the Court entered a written order that memorialized its decision *"to give Wysong's counsel an opportunity to attempt to address [the] deficiencies [that Defendants' believed existed in the original Complaints] through an Amended Complaint."* (ECF #14 at Pg. ID 108; emphasis added.)

Counsel conducted the required meet-and-confer sessions, and Wysong thereafter filed its First Amended Complaints.  Wysong did not add many new factual allegations in its amended pleadings. (*See, e.g.,* redline comparison between Wysong's Complaint and Amended Complaint, *Wysong Corp. v. Hill's Pet Nutrition, Inc.* Case No. 16-cv-11825 (E.D. Mich.) at ECF #15-2.)  Notably, Wysong did not add factual allegations concerning the specific nature and/or context of any of the allegedly-misleading images, concerning any words or statements used on the packaging in conjunction with the images, or concerning any specific marketing efforts (such as particular statements in television advertisements, in website promotional materials, etc.) that may have reinforced the allegedly-misleading

40

nature of the images  Instead, Wysong's counsel "made the decision to leave [the claims largely] the way they are." (*Wysong Corp. v. Nestle Purina Petcare Co.*, Case No. 16-cv-11827 (E.D. Mich.), 2/1/17 Hearing Tr. at 71, ECF #22 at Pg. ID 425.)[22] Having made that decision, Wysong is not entitled to amend again.

Wysong counters that it should be permitted to amend because it proceeded in good faith and because, if permitted to do so, it could add allegations to satisfy the Court's concerns about the plausibility of its claims.  The Court does not doubt Wysong's good faith, but that good faith is not enough to warrant another amendment.  Wysong's litigation strategy imposed real and substantial costs on Defendants and on the Court.  The Defendants spent significant time and money preparing their motions to dismiss and supplemental briefs and traveling to and from Detroit to argue those motions.  Likewise, the Court spent many hours reviewing the briefs (over 300 pages in total), studying the case law, holding oral argument, and drafting this Opinion and Order.  The purpose of this exercise was to assess the viability of Wysong's once-amended claims, not to provide Wysong with

---

[22] In the Initial Motions to Dismiss, each of the Defendants also directed Wysong to the *Blue Buffalo* case in which a federal court found analogous claims to be plausible. (Mars' Initial Mot. to Dismiss, ECF #7 at Pg. ID 179-82; APN Initial Mot. to Dismiss, *Wysong Corp. v. APN, Inc.*, Case No. 16-cv-11821 (E.D. Mich.), ECF #9 at Pg. ID 81-86; and Wal-Mart Initial Mot. to Dismiss, *Wysong Corp. v. Wal-Mart Stores. Inc.*, Case No. 16-cv-11832 (E.D. Mich.), ECF #13 at Pg. ID 67-69.)  Despite being directed to *Blue Buffalo*, Wysong did not include in its Amended Complaints allegations – like those in *Blue Buffalo* – concerning the context and character of the allegedly-deceptive images and the related media campaigns.

constructive criticism regarding how to save those claims through yet another amendment.  Notwithstanding Wysong's good faith, it is not "not entitled to an advisory opinion from the Court informing [it] of the deficiencies of [its] complaint and then an opportunity to cure those deficiencies." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (quoting and affirming district court order denying leave to amend complaint).

In sum, Wysong had a full and fair opportunity to amend its pleadings and to put its strongest possible claims before the Court and the Defendants.  Justice does not require the Court to grant Wysong a "do over" under these circumstances.  Thus, even though Rule 15 embodies a liberal policy in favor of permitting amendments, *see*, *e.g.*, *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 552 (6th Cir. 2008), the Court declines to grant Wysong leave to file a Second Amended Complaint.

## VIII

For the reasons stated above, the Defendants' motions to dismiss are **GRANTED**.  Wysong's First Amended Complaints in all of the above-captioned actions are **DISMISSED WITH PREJUDICE** and without leave to amend.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 20, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 20, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

# **APPENDIX ONE**

| DELETED FROM ORIGINAL COMPLAINT  BECAUSE THEY "DON'T FIT WITH WYSONG'S THEORY" | LEFT IN AMENDED COMPLAINT AS REPRESENTATIVE OF WYSONG'S "THEORY" |
|---|---|
| <br>Purrfect Bistro Turkey Recipe Shredded in Gravy<br>(*Wysong Corp. v. Nestle Purina Petcare Company*, Civil Action No. 16-11827, ECF #1-2 at Pg. ID 42.) | <br>Purrfect Bistro Savory Duck Recipe Shredded in Gravy<br>(*Wysong Corp. v. Nestle Purina Petcare Company*, Civil Action No. 16-11827, ECF #1-2 at Pg. ID 41; ECF #16-3 at Pg. ID 245.) |
| <br>Purrfect Bistro Savory Trout Dinner Morsels in Gravy<br>(*Wysong Corp. v. Nestle Purina Petcare Company*, Civil Action No. 16-11827, ECF #1-2 at Pg. ID 45.) | <br>Limited Ingredient Diet Real Salmon Recipe<br>(*Wysong Corp. v. Nestle Purina Petcare Company*, Civil Action No. 16-11827, ECF #1-2 at Pg. ID 48; ECF #16-3 at Pg. ID 248.) |



Iams Woof Delights Bowl  Licken' Chicken & Vegetables Medley
(*Wysong Corp. v. Mars Petcare Co.*, Civil Action No. 16-11826, ECF #1-3 at Pg. ID 88.)



Iams Adult Chunks with Chicken and Vegetables in Gravy
(*Wysong Corp. v. Mars Petcare Co.*, Civil Action No. 16-11826, ECF #1-3 at Pg. ID 74; ECF #14-2 at Pg. ID 298.)



Milk Bone Soft & Chewy Chicken Recipe
(*Wysong Corp. v. Big Heart Pet Brands et al.*, Civil Action No. 16-11823, ECF #1-3 at Pg. ID 57.)



Healthy Favorites Chewy Treats with Real Chicken
(*Wysong Corp. v. Big Heart Pet Brands et al.*, Civil Action No. 16-11823, ECF #1-3 at Pg. ID 58; ECF #16-2 at Pg. ID 143.)





| | |
|---|---|
| Nature's Recipe Easy to Digest Chicken Rice & Barley Recipe Cuts in Gravy (*Wysong Corp. v. Big Heart Pet Brands et al.*, Civil Action No. 16-11823, ECF #1-3 at Pg. ID 64.) | Nature's Recipe Easy to Digest Chicken Rice & Barley Recipe Homestyle Ground (*Wysong Corp. v. Big Heart Pet Brands et al.*, Civil Action No. 16-11823, ECF #1-3 at Pg. ID 65; ECF #16-2 at Pg. ID 148.) |